GhebN, J.
delivered the opinion of the court.
The facts of this case are shortly as follows. The defendant, Ray, was guardian of Nancy Garrett, one of the complainants, now wife of the complainant, Bond. The defendants, Hamilton and Hill, were Ray’s-sureties in the guardian bond. Upon a settlement with the County Court, Ray was indebted to his ward $614 92. In 1841, Bond gave an order to Thomas Hughes on Ray for $33 75, which was accepted by Ray. On the 1st day of January, 1842, he gave William McKenzie an order on Ray for $446 37, the balancé Ray then owed. This order was also accepted. Some payments have been made-upon this order, and it has been transferred to the complainant, -Southall. Bond and wife, Hughes and Southall, are all parties complainants in the bill.
A recovery is resisted by Hamilton and Hill, the sureties, on the ground:
1st. That by drawing these orders in favor of Hughes and McKenzie, and their acceptance by Ray, he was discharged from all further liability as guardian, and became bound as a private debtor only, and that Bond thereby discharged the sureties from all liability. We think there is no foundation for this position. The orders do not purport to change the debt, nor can they have that effect They are no more than a direction to pay the fund to other persons. They are no new security given- by Ray, operating a discharge of the debt. By their terms the debtor was to be discharged upon the payment of the orders. It is not like the case where a new note is taken, or where the creditor takes an order on a third person from the principal debtor. In such cases a new debt is created, on the individual responsibility of the debtor, and the sureties in the *494 old obligation are discharged. But an order to pay another, does not change the nature of the debt, or affect its validity until the order is paid. The transfer of this debt by the order to McKenzie, can have no other effect than the transfer of a note by assignment, would have.
2d. It is next insisted, that the complainant, Bond, was guilty of unfairness towards these sureties, and enabled the defendant^ Ray, to deceive them with assurances, that he had paid the debt. It appears that when the order to McKenzie was drawn and accepted, all the parties, Bond, Ray and McKenzie, were together, and that two or more orders were drawn and signed, and that for some cause, not satisfactorily explained, one of these orders was left on the table and fell into the hands of Ray. Ray says in his deposition, that Bond left it in his hands to show Bond’s creditors, who might desire to garnishee him, that the debt was transferred. Bond alledges that he was not satisfied with the manner in which it was accepted, and drew another order, which was accepted as he wished, and that the first one was inadvertently left on the table, and thus fell into the possession of Ray. Ray told his sureties that he had settled with Bond, and had a full receipt, but he did not show the order he had kept in his hands, purporting to be drawn by Bond in favor of McKenzie. It is insisted that there is a want of good faith towards these sureties on the part of Bond, manifested in the transaction relative to this order — that he enabled Ray to deceive them, so that they were lulled into security and failed to obtain the indemnity they otherwise might have had. It is certainly true, that a creditor must in all transactions with the principal debtor, act with the most perfect good faith towards sureties, for if he does any act injurious to them, or inconsistent with their rights, or omits to do any act which his duty to them requires him to perform, whereby they are injured, they will be discharged from responsibility. Story’s Eq. sec. 325-26: Thompson vs. Watson & Gibson, 10 Yerg. R. 362.
But the question recurs. What act has Bond done inconsistent with the rights of these sureties? Ray says, that Bond left the duplicate of his order in favor of McKenzie in his (Ray’s) hands, that the creditors of Bond might be satisfied Rajr owed *495 him nothing, and might be detered from summoning him as a garnishee. This he had a right to do. If he owed McKenzie (which is not controverted) he had a right to apply the money in Ray’s hands to the payment of that debt in preference to others, and having so applied it, there was nothing wrong in wishing his other creditors to know how the fact was, so that he might avoid useless litigation. Having placed this duplicate order, therefore, in the hands of Ray for a lawful purpose, he is surely not answerable for any wicked and unlawful use which Ray may have made of it. Had Ray, therefore, instead of showing the order to Bond’s creditors — the object intended— shown it to his sureties, by which they were deceived into the belief that the money had been paid and the order taken up, still we cannot perceive upon what ground Bond could be chargeable with the deception. But Ray did not show them the order; he only told them he had settled with Bond and had a receipt in full. This he knew was false, and the sureties were deceived by him, but surely a creditor is not responsible for the false representations of his debtor to the sureties. It is not like the case of Harris vs. Brooks, 21 Pick. R. 195, where the holder of a note told the surety that he would look to the principal and not to him for payment. Nor is it like the case of Baker vs. Brigs, 8 Pick. R. 122, where the creditor informed the surety the debt of the principal was paid. In each of these cases the surety was deceived by the representations of the creditor. But here the creditor made no representations to the sureties himself, nor did he have any agency in the falsehoods the principal debtor told them.
It is said Bond told one of his creditors that Ray owed him nothing. This in that connection was true. The debt had been transferred to another, and in connection with the object of Bond’s conversation with his creditor, Ray had ceased to owe him. But there is no proof that these sureties knew anything of this statement of Bond; they could not, therefore, be deceived by it.
Upon the whole we think there is no error in the record, and affirm the decree.